Please all rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the Second Judicial District is now open pursuant to adjournment. The Honorable Donald C. Tyson is presiding. Please be seated. Alright, thank you and good morning. Your Honor, this case on the docket 2-16-0860 A. A. Doe v. Williams McCarthy LLP At all defendants appellees are you in one behalf of the plaintiff's account? Ms. Susan M. Mulder, are you in one behalf of the defendant's appellee? Mr. Dindig and Ms. Sullivan. Ms. Goldberg on behalf of the appellant, you may proceed. Good morning. My name is Susan Goldberg and I'm here to represent the appellant who is known as Jane A. Doe. Ms. Doe is a person who has received mental health treatment. Ms. Doe is a person who has a set of records, which are her own mental health records, which are protected by a very important confidentiality statute that has been in place here in Illinois for many years, known as the Mental Health Confidentiality and Developmental Disabilities Act. And on her behalf, I filed suit in Lee County Circuit Court to redress various violations of that act, as well as other wrongs that, it was our opinion, were done in the course of an underlying case. And in that underlying case, Ms. Doe had brought a suit disputing the validity of two trusts. And in the course of that, Ms. Doe, in the course of the underlying case that was also pending in Lee County, Ms. Doe herself was never asking to be appointed as the trustee. Ms. Doe never interjected her own mental health into that case. And in fact, the trial judge in that case, Judge Jacqueline Ackert, in fact specifically stated, both verbally on the record and in the form of a written order, that she, Judge Ackert, had made no determination as to whether Ms. Doe's mental health was in issue or was relevant. What was the issue about confusing certain records? How did this all come about? Your Honor, are you asking how? In the underlying case. Okay, sure. Yes. Oh, I believe I know what Your Honor is referring to. The trust in question was a trust executed by Ms. Doe's mother. And that trust, or those two trusts, I guess, were Ms. Doe's disputing that they were actually valid, that her allegations were, among other things, that those were done by undue influence on the part of Ms. Doe's sister, who was one of the defendants there and who's one of the defendants here. And it was the attorney for Ms. Sarver, Ms. Doe's sister, who himself raised the question that he believed that Ms. Doe's expert, who was Dr. Carolyn Van Doren, had relied upon not the deceiving the mother's mental health records, but to look into the question of whether, indeed, the mother was competent to execute the trust. So, I mean, I think we understand the genesis of the litigation. Yes. I mean, ultimately, isn't the real issue before the Court coming down to whether or not the absolute litigation privilege that the trial court applied, should that give way to the confidentiality and protections of the act? I mean, that's where the tension is here in this case. Sure. I believe that is a central question here, which I think makes this an extremely important case. I think it is, and it may be a case of first impression. So the pointed question to answer is, why would the litigation privilege, why would the confidentiality provisions of the statute preempt the absolute litigation? But tell us why we would go in that way. Sure, sure. Because, I believe, important societal concerns are at hand here, namely, the absolute litigation privilege is, to say it another way, an exemption from accountability. That's a way when an attorney who has advanced some argument, including some, perhaps made some defamatory comments in the course of litigation, is exempted from any punishment, is viewed with impunity. But for that to apply, there have to be certain factors met, such as there has to be an important societal concern or purpose to be advanced. I think you can hang your head in it. It's a very strong argument. All right. I think it's important to know when we look at the law itself, and there's all sorts of common law privileges, as you know. Yes. The question is, can the legislature step in and do that, override the existing privilege? But more importantly, perhaps, is there something in this Act itself, how do we know the legislature intended for the confidentiality Act to trump the privilege? How do we know that? Sure. Well, I think one way to know is that there is contained within the Act no exemption for attorneys. There's contained no exemption for anyone to violate the Act. And, in fact, on the contrary, the Act itself does provide that any person aggrieved by a violation of this Act may sue for damages, including attorney's fees. If, indeed, the legislature had intended that the confidentiality of mental health records should be superseded by an attorney's ability to litigate zealously, would not that have appeared within the statute? And would not there, by now, be a case saying that for mental health confidentiality Act violations, the absolute litigation applies? No, there has not been such a case. And that's why – You make a very logical point, but it comes to mind when you make that argument, is if the legislature, however, did intend to overrule the privilege, why didn't they say so in the statute? I think it was probably not anticipated as necessary. Because it's a statutory cause of action. All of those cases cited by the defendants are common law causes of action. Defamation, negligent, intentional infliction of emotional distress, breach of contract. None of those are statutory. And that's what makes this different. Let me ask this. In the course of your research, did you come across any cases that stand for that proposition that the legislature intended to overrule the common law privileges in this context? Can they do that? Is there a separation of powers issue there? I think that's a central question here. That, in other words, if Your Honors believes that the absolute litigation privilege trumps or supersedes the Mental Health Confidentiality Act, I believe there is a separation of powers question. That Your Honors would be, in essence, undoing the protection of the Mental Health Confidentiality Act so that a person such as Ms. Doe is then faced with a quandary or persons who would then have a precedent that says, Don't worry, counsel. If you violate the Mental Health Confidentiality Act, you're protected. You will not have to answer for that. So Ms. Doe and others like her are faced with a dilemma. Should they bring suit for disputing trusts, for disputing whatever they may wish to, to seek legal recourse? Should they do that if what is at risk by doing that is that their mental health records will be open? Well, in the ordinary case, they wouldn't be. But here there was some issue as to whether or not the expert had examined the mothers or the daughters, correct? That issue was raised only by the attorney for the defendant. Well, it had to be raised by somebody. I don't believe it did because Ms. Doe herself had no participation in the preparation of the trusts. It was Ms. Doe's sister. In other words, Ms. Doe was saying, and it was indeed found that, after review by the third-party attorney, Mr. Thompson, those were not Ms. Doe's records. Those were her mother's records. Now, Judge Fish, as I understand it, made a finding that Judge Ackert, in the underlying case, had entered the HIPAA order regarding the subpoena of her mental health records, and at that time that neither the plaintiff nor her attorney objected. Is that right, that he made that finding? First, did he make that finding? Second, was it correct? You're asking, Your Honor, did Judge Fish make or did Judge Ackert? Did Judge Fish make the finding that Judge Ackert, when she entered the HIPAA order, at that time that neither the plaintiff nor her attorney objected to it? I believe that's correct. I'm sorry, which is correct, that Fish made that finding or that, okay, let's start there. Okay. So that part is correct? I believe that's correct. Okay. We all agree a HIPAA order was entered, but we do not concede that in any way that HIPAA order allowed the Mental Health Confidentiality Act to be violated in any sense, nor did it provide that subpoenas for mental health records could be issued without following the very detailed protections and procedures of the confidentiality act. Okay. So back to Judge Fish. Yes. So he made that finding. Was that finding correct then, that when Judge Ackert entered the HIPAA order, there was no objection? That is my understanding, yes. Okay. Your argument is with what the HIPAA order provided for. Yes. Whether or not it provided for the mental health records. Yes, correct, correct. And, in fact, at the very end of that HIPAA order, there's a provision that says this order does not excuse compliance with the Mental Health Confidentiality Act. So I believe it indeed emphasized the importance of that act. That was in the order itself? Yes, in the HIPAA order itself. I believe it's the very last paragraph in that order. Weren't there some subpoenas actually issued prior to the HIPAA order that related to mental health records? Yes. In fact, Jane Doe's mental health records? Yes. What happened with those? With those subpoenas? With that subpoena. That subpoena was issued by Attorney Lindsey. Even though there had been no order whatsoever, it was entered. And I believe that records were received in response. I was not involved in the underlying litigation at that point. But if that is a good point, Your Honor, and I raised that in my brief, and that was one of several findings that Judge Fish made that were incorrect. Judge Fish incorrectly stated the date of that first subpoena. He stated it as being issued after the HIPAA order. It actually was issued before. I brought that up in my motion to reconsider as well before Judge Fish. He declined to respond to it. And as well, the defendant declined to respond to that. Let's go back to the issue of the privilege. Yes. If there is a requirement in the act that the order for these records be carefully observed, and that's this HIPAA order, does that in any way provide any indication that this absolute litigation privilege might not apply? I believe it does. Yes. First of all, that is indeed a specific requirement in the Mental Health Confidentiality Act. It is required that when a record subpoena is issued for mental health records, the order authorizing such subpoena to be issued must be attached to the order. In this case, as to that first subpoena Mr. Lindsay issued, there was no order to attach. But nonetheless, no order was attached to any of those initial subpoenas. So I think that that provision indicates that the attorney has a very – any attorney seeking mental health records has a very specific set of procedures that must be followed as safeguards. And whose job is that to make sure that attachment occurs? I think it is incumbent upon the attorney who is issuing the subpoena to, first of all, do it, follow all of those procedures, but only after a couple of things have happened, namely that the court has made a finding that the recipient herself has placed her mental health in issue, and that an order specifically authorizing such mental health records to be issued is entered, with notice to the mental health providers, who then have the opportunity to come and present objections, if they wish, at the date of the hearing. None of that was followed here. So that is, I think, an example of how the Act itself, the Mental Health Act, has made very specific, detailed procedures required. Those were not followed here. Let me ask you this. Part of what we're called upon to do is to reconcile the ostensible conflict between the privilege and the confidentiality Act. And part of that process calls upon us to interpret the intent of the legislature. Attorneys can do this. Have you ever tried to look into the legislative history of this Act and determine whether or not there was any debates or any intentions expressed by the legislature as to what the purpose of this Act was and what it was supposed to cover and not cover? I have not. I just draw upon my review of case law, where many, many times courts are citing to the purpose of the Act and the portion of the Act that describes its purpose, and it's the importance of protecting the confidentiality and of encouraging people, if not encouraging, then at least allowing people to feel free to seek mental health treatment. Just as we want to encourage people to seek substance abuse treatment, alcohol treatment, to be tested for HIV-AIDS, all of those statutory provisions that I've just mentioned are specific protections. If the Act didn't cover what it was intended to cover, it might have a chilling effect on people seeking mental health treatment. Sure. Exactly. For example, Ms. Doe, will she now be likely to file suit for some wrong which she believes has been done to her? I think she will be very reticent to do so unless this appeal is resolved in her favor or she's at risk for, again, her mental health records being viewed at will by others. Thank you very much, Ms. Goldberg. You'll have an opportunity to address the Court of Human Rights. Correct. Thank you. Pointing on behalf of the deputy, Mr. Sorenson. Thank you, Your Honors. My name is David Sorenson. I represent all of the defendants in the matter. And I'd like to just start off with the thought that a party like the plaintiff should not lie in wait and allow a course of action to occur in one litigation. Indeed, even encourage an alleged violation of the act and then later pursue those claims in separate litigation that should have been brought in the same action. It was brought in the same action, was it? Well, she sought sanctions. Yes and no. It's a little unclear. On the one hand, they say they didn't really litigate it there and they should be able to file a separate case. I've said in my briefs, they did bring it. Which Judge Ackert denied. Is there any res judicata effect in that? I think there's, technically speaking, it probably doesn't rise to, it may not rise to res judicata because it ultimately wasn't necessary determination of litigation in the underlying action. Here's the thing. The big distinction from the other cases, Manziera and Kim are the main cases the plaintiff relies on. The big difference in those cases is that in both of those cases the underlying courts actually made a determination. They said these mental health records are going to be used. They were determined. People lost custody of children in those cases. There were significant determinations made. In this case, the court never got there. The court, and this is the sword and shield issue that's very important. Yes, mental health protection of confidentiality is important. It's important for people to be able to seek treatment when they need to. But it should not be used as both a sword and shield in other litigation. Mr. Lindsey, in the underlying case, and this is in the record, in transcripts before Judge Ackert, he believed not only that, he had information belief that the plaintiff, who was interviewed by the expert Dr. Van Doren, co-bingled her health histories with her mother's, believed to be in an attempt to influence the expert. And the second issue, Mr. Lindsey wanted to be able to address and compare that in order to be able to effectively cross-examine that expert. So... Well, I think what you're going for is the fact that there was no objection to the order that was entered at the time. And had the order been followed, I think that would be a valid issue. But the order wasn't followed. The procedural safeguards of the order were not followed throughout the course of getting those records. In fact, Your Honor, the plaintiff's attorney at the time, Mr. Whitcomb, actually signed that HIPAA order. Both attorneys signed it. They signed off on it. The first subpoena, the one subpoena that was sent in November of 2001, the plaintiff immediately, through Mr. Whitcomb, filed a motion to quash. Nothing happened on that until the hearing in March of 2012 in front of Judge Ackert, when she allowed the subpoenas to be issued. Because she believed it to be... She had not yet resolved the determinations to whether mental health had been put at issue, but she believed it was sufficient to investigate. And that's when the further subpoenas were issued, signed by plaintiff's counsel. But the orders weren't attached. The HIPAA order, were they attached to the subpoenas? The record doesn't show. Well, I think counsel said they weren't. Is this a separate set of subpoenas that didn't have orders attached to them? The record only shows what I believe is incomplete copies. It just shows the face sheet of the subpoena. It shows nothing else. Were the mental health providers notified of this HIPAA order in any way? Your Honor, the act, as I read it, does not require the mental health providers to be notified of forehand. It does require the parties in interest in the litigation to be notified if they were aware. It does not require that the mental health providers be notified. The plaintiff also did not advise her health providers to object or refuse to comply. Did not file a motion to quash. In fact, in the petition for costs and sanctions... Did the plaintiff have notice of the subpoenas? Yes. Go ahead. In the petition for costs and sanctions, the plaintiff actually asked the Court to appoint Bob Thompson as the referee. This is where I'm talking about the inviting the other side in and saying, well, all right, let's do it this way. They were trying to work this issue out in the underlying case. That's why I don't think this is a landmark case. I don't think this is a precedent-setting case. I think it can be decided narrowly on its facts. Well, I think we may get beyond that. You seem to be saying there were some procedural problems with the conduct of the litigation from the plaintiff's standpoint. And even if we agree with that, as I understand it, the trial court ultimately ruled that the absolute litigation privilege trumped the confidentiality act. Correct? I believe the Court did. I think eventually you might want to turn your argument to that issue because we may be reaching that issue. Thank you, Your Honor. Judge... Tell us why. Well, tell us what would be the purpose of the confidentiality act and how would it protect the plaintiffs if the absolute litigation privilege would trump that? In other words, the Court says, okay, there were some violations of the act. It doesn't matter because we have this thing called the absolute litigation privilege. So why would we exalt that over the mental health confidentiality act? Well, because of the four factors in the absolute litigation privilege applying that test. Does the action that's going on further the litigation objective in the case? Is it in furtherance of the defendant representing their client? Are those aware or receiving any documents connected with the action? And did it occur in the context of close court supervision? All of those things are present here. And those safeguards, the judicial safeguards which are referenced in the case law that I cited, are critical because the Court noted... Did the judge do an in-camera? Did Judge Ackert do an in-camera of these? Bob Thompson was going to do the in-camera. And, in fact, as a point of clarity on the record... He may have, but doesn't Judge Ackert also have an obligation to do so? Did they say, okay, we're going to let Bob Thompson take Judge Ackert's part in this? Can Judge Ackert give up her responsibility? She can appoint him as a guide to aid her in the determination of whether the mental health is at issue. And Mr. Thompson, by the way, did not have all of the records. So he did issue his opinion that the records did not appear to show a commingling of histories, but he didn't have all the records in front of him as the record indicates by the transcripts. Thompson, you've read and referred to the Manzieri case and the Renzi case. You've read those cases, correct? Yes. Didn't the First District there hold that the provisions of the Act overrode common law witness immunity, granted its different privilege? But why wouldn't we find, come to the same outcome here with regard to the absolute litigation privilege? Manzieri can be, I'm sorry, you're talking, yes, Manzieri references the Renzi case. The Renzi case is the one where I think that quote comes from. And that case is not the same as this one. It didn't raise absolute litigation privilege. It's an earlier, it's a 98 case. The evolution of this absolute litigation privilege has been more in the recent years for O'Callaghan than Johnson. But in that case. It did ostensibly limit the application of a common law privilege, did it not? But that was because the psychiatrist voluntarily showed up and didn't, without, in the face of the objection of the client, the plaintiff in that case, just showed up in court to testify. When that, in that person in that case. Let me ask you a pointed question. What do you perceive the holding of Manzieri to be? The legal holding of that case was what? The psychiatrist showed up, therefore the privilege is waived? What are you saying? Well, Renzi, I think, I agree with you that Renzi held that the common law witness immunity would not apply in that situation. But I think it's decided, I think it's limited to the facts of that case. But the same reasoning or the same rationale arguably could be applied here. Because the court found that the piece of legislation basically preempted, to a certain extent, a common law privilege. That's what she's arguing here. Absolute litigation privilege is a common law. It's not a statutory privilege, correct? Correct. Correct. Tell us why the court or the legislature couldn't do that. If we find they intended to do that, is there some constitutional impediment that prevents them from doing that? I'm not aware of a constitutional impediment to prevent them from doing it. But I think that if the rules of statutory construction are important here, we can't read into a statute things that are not there. And there's, just as counsel said. I agree. You're both arguing the same sort of speculation. She says there's nothing there to say that it doesn't. You're saying there's nothing there to say that it does. So they sort of cancel each other out. It's still a matter of applying the statute in the intent of the statute. Right. And I think from there I go to the case law in Johnson and O'Callaghan that talk about how even in the face of uncompensated harm, this absolute litigation privilege is to be applied. That indicates an intention or a belief that this should be extended and that this should trump situations like this one. Because otherwise, how can a defendant even seek justice in the court, seek the truth in the court, if they believe that a shield is being held up against them, preventing them from getting to the truth of the matter? The Mental Health Act is not intended to trump everything. No, it isn't. But if the proper procedures are followed, would you end up in the same place anyway? You're not prevented from bringing these issues up. You just have to follow the designated procedures. In this case, the ostensibly weren't followed, and the court says, well, it doesn't really matter, because you've got this overall, we're talking about shields, that trumps the act. So therefore, no harm, no foul. Isn't that a little problematic? It's, you know, I think it's one of the reasons why this case is not a landmark case today. It can be just limited to its facts because the judge in the underlying case never got to a decision on it. And everybody was closely working together to try to work this out. This wasn't a situation like in Kim or Manziera where there was a full and final decision, which ended up impacting the plaintiff in those cases. So you're suggesting the old doctrine, if we can avoid reaching a constitution, we can avoid that as well? Yes, Your Honor. Why would the HIPAA Act allow for litigation against lawyers with possible recovery of fees for violations if an absolute litigation privilege applied? I mean, it seems to be counterintuitive that those things would sit side by side in some way. Well, I think a simple answer to that is because there are situations that occur where the plaintiff, the person interested in the records or having had the treatment, is not adequately protected. The safeguards are not there. For example, in Manziera, the plaintiff in that case initially wasn't even represented by counsel. And the records were just brought into court, the court questioned her on them, and she lost custody temporarily, partial custody of her child. So she didn't really have a situation where there were safeguards there to protect her. In this case, safeguards were abundant. The judge was regularly conferring with the parties and communicating with them on these issues, where are the records and what's going to be done with them. So it's a much different situation than some of those, but those situations can occur, and I think that's why the protection is there. Otherwise, we have a situation like this where attorneys are, the idea that attorneys could be held up to some sort of ambiguous possible damages because the act isn't really clear on the damages, for a technical violation potentially of the act when in a situation like this, the individual has counsel, they're following them every step of the way, they're actually inviting outside in the view of the records. It's a very different situation than the one in Manziera or Kim. But even a technical violation, I think under the terms of HIPAA, it could be compensable. And that's a perfect place for referencing that, you know, there's a normally Supreme Court case, D.C. v. S.A. from 1997, and it's 178 N.S. 551, 227 I.D. 550, 687 N.S. 1032, that says that strict compliance can be excused where the recipient of services seeks to use the act as a sword and shield. And I think that's a good place to go and consider because that's exactly sort of what was happening here. So a defendant can't face the chilling effect of being afraid to do something, especially when there's a court supervising everything and they're working with the other party to get to a point where they can find the truth because that's part of what this is all about. And so, you know, with this case, the Supreme Court,  whether or not it's been a valid case and whether or not it's not, had they been able to explore this further, had a final determination they made in the case, that might have led the parties to some sort of a resolution. Does this case go out on a summary judgment motion? Pardon? Does this case go out on a summary judgment motion? The underlying case? Yeah. No, it went to a bench trial. I mean, this case. This case was on a 619 motion to the Senate. So the merits were never really reached. There was no discovery in the case. It was based on what's in the record of the pleadings. Well, if it got remanded back, then you'd have your chance to get into those issues, right? Well, I don't think that that's really warranted here because of the absolute litigation privilege. And clearly, the absolute litigation privilege knocks out the intentional infliction of emotional distress and the invasion of privacy claims. The legal malpractice part is already out. I don't think that's being appealed here today. It's just this issue about the act. And I think that, you know, going back to the case law in Johnson and O'Neill County and saying that even in the face of uncompensated harm, this right for attorneys to be able to explore and find the truth is critical. I mean, it has some, you know, intuitive superficial appeal, except the other side is going to say that's all well and good, but the legislature can, in its purview, in its prerogative, decide to limit that. It's time now, given the concern about mental health records, that we step in and do something. I'm not seeing at the moment anything that would prevent them from doing that. Well, that gets back to the problem in this case where the judge and the parties were trying to get to this determination. And I agree. It's an important determination whether the mental health has been placed in issue. And the parties were trying to get there, but they didn't get there in this case. The other cases they did, if the legislature wanted to, say, speak specifically to a situation like this, they could have. I didn't do extensive legislative history research myself. I did some brief review, and I did not find anything pertinent to the topic. But there is some history, say, in Ocalahan. That, if I can't remember if that's a defamation or the invasion of privacy, but there's history in the law in those particular areas about what the issues are, how they need to be proven, and things of that nature. This is ñ this Mental Health HIPAA Act is relatively new and has not had a lot of litigation about it, maybe for this reason or maybe because other courts are more specific in how they follow it and they abide by their responsibility. So I guess the issue is why ñ my bottom line question is why should we say, okay, judge, you don't have to do your job. Parties, if you agree to this, you're obviously giving up all sorts of things. I mean, what's the compelling reason to do that in this case? Because the safeguards were there. It was represented both by prior counsel and by current counsel in that very case. But prior counsel got out at some point in time. He did. We can make certain assumptions about why he might have gotten out. There might have been disagreements. He did not get out before the verified petition for costs signed by the plaintiff requesting Bob Thompson to review the records was filed with the court. So that's a very significant part because we have someone who is ñ we have a plaintiff who is basically saying, okay, let's do this. And now they're turning around and saying, no, wait a minute, I want to sue you for that. That should have been raised in the same litigation, in the underlying case in front of Judge Ackert. And Judge Ackert didn't grant the sanctions that they did seek. She did give the plaintiff some relief in sealing the record and ordering return of records, reserving the issue on a mental health issue. So the judge did give the plaintiff relief in that case. So this isn't ñ the facts don't really ñ really lend themselves, I think, to a broader pronouncement of the law. Thank you, Mr. Sorensen. I think time has expired. Thank you. Thank you, Your Honor. Ms. Stoltenberg, you may disband. Yes, thank you. I do take issue with several points raised by Mr. Sorensen. First of all, as I pointed out in my reply brief, the defendants have misstated the sequence of events. The plaintiff did not lie in wait and wait to ñ wait until the underlying case was concluded before filing this suit that we're here on today. The plaintiff did not lie in wait. Yes, the plaintiff objected to what was happening in the underlying case and attempted to seek redress from Judge Ackert. But recall that Mr. Lindsey, Attorney Lindsey, was not a party in that underlying case. So the logistical question comes up. Well, if it was expected that Ms. Doe resolve all of her complaints and all of her ñ raise all of her grievances about Mental Health Act violations in the underlying case, how was she to have done that? How would Mr. Lindsey himself have been required ñ When he wasn't a party to the case. Correct. He wasn't a party. He is now. He's a party in this case. But he wasn't a party. He was counsel. He could have ñ as a lawyer, though, he could have been sanctioned. He could have been. If the court had found it objectionable. Yes. Yes. He could have been sanctioned. I also take your ñ But doesn't a sanction go to a violation that relates to the court as opposed to a redress for the plaintiff? Exactly. Exactly. In other words, whatever relief Ms. Doe might have obtained there, she did not. She obtained no relief there. But she would not have had the full ability to seek remedies of any type as the Mental Health Act envisions that she can try to receive. Maybe the next question would be, although it was filed before the resolution of the underlying case, why was it filed first in ñ was it Cook County? Yes. It was filed first in Cook County because of the defendant law firm, Williams McCarthy, being one which is a firm that does business in virtually ñ or many counties in Illinois. So it was filed first there. It was not found to have been filed in a wrong venue, but instead Mr. Sorensen filed a motion for forum nonconvenience. That was granted. In other words, the Cook County court found that it was a more convenient forum in Lee County, which is where the case did then proceed all the way to bench trial. I also take issue with the suggestion that applying ñ or, I'm sorry, providing a referee was just fine, and also the suggestion that the parties tried to work this out. That is simply false. There is nowhere in the record indicating so. And I think, as Your Honor, Justice Hutchison has suggested, the Mental Health Act cannot be modified by agreement of the parties. Or even if it were, that does not prevent a party, Ms. Doe, from later seeking redress. Does the record show that your client objected to Bob Thompson's appointment? In her ñ in the affidavit, which I prepared for her in the underlying case, it does indicate that she never gave her then-attorney, Mr. Whitcomb, permission to give her record. That's after the fact, though, you're saying? Yes. But at the time that that order was entered, was that an agreed order or was there an objection to it? Well, at the time, Ms. Doe would say that she never authorized her then-attorney to agree to that order. That, I believe ñ a separate case was filed as against Mr. Whitcomb. That has been resolved. But that was among her allegations, that she gave him no commission to provide that to Mr. Thompson. Even if it is presumed that the parties agreed, nonetheless, there is no court order. But even more importantly than that, there is case law. There is no court order for his appointment? Yes, exactly. No court order whatsoever. You will see in the ñ in this court's record, there is a listing of the court entries in the underlying case. No order appointing Mr. Thompson was ever entered. No order of any kind was ever entered specifying the parameters. And, as I pointed out in my complaint, Mr. Lindsay not only provided the full set of Ms. Doe's mental health records, he provided a cover letter wherein he proceeded to make commentary about the sad state of Ms. Doe's mental health. That is simply inexcusable. And he should not be excused and allowed to have acted with impunity for that violation. And there is a specific case which is cited in my memorandum in support of my motion to reconsider this case, page 11, which says that no in-camera review is allowed for any person other than ñ to be done by any person other than the court, i.e., not Mr. Thompson. And that's the Laurent case. Thank you, Ms. Goldberg. Thank you all. All right. I'd like to thank both counsel for the quality of their arguments here this morning. And the matter, of course, will be taken under advisement in a written decision issued in due course. We stand adjourned for the moment to prepare for the next case. Thank you.